UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,                          Case No. 15-CR-0348 (PJS/TNL)

        Plaintiff,

v.                                                                            ORDER

RONALD ALLEN CLASS,

        Defendant.

---

David Steinkamp, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Douglas Olson, OFFICE OF THE FEDERAL DEFENDER; and Lauren Campoli, for defendant.

This matter is before the Court on defendant Ronald Class's objection to the May 5, 2016 Report and Recommendation ("R&R") of Magistrate Judge Tony N. Leung. Judge Leung recommends denying Class's motions to suppress physical evidence and statements obtained during the police encounter that resulted in Class being indicted for unlawfully possessing a firearm and ammunition.  The Court has conducted a de novo review.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b).  Based on that review, the Court disagrees with a substantial portion of Judge Leung's analysis, but agrees with his ultimate conclusion that Class's suppression motions should be denied.  The Court therefore adopts the R&R to the extent that it is consistent with this order.

The Court will assume familiarity with the R&R, including its lengthy description of the facts.  *See* ECF No. 48 [R&R] at 2-11.  In short, Class asserts that there

were constitutional violations at nearly every stage of his encounter with St. Paul police

officers on October 2, 2015.  That encounter began when Officer Trygve Sand and

Officer Andrew Heroux approached Class and a companion (Patrick Hedican) as they

stood in front of the open hood of a parked Lincoln Town Car, and ended with the

discovery of methamphetamine, a digital scale, a handgun, and a machete.  In his

objection to the R&R, Class continues to challenge the validity of (1) the initial stop;

(2) the pat-down search; (3) Officer Sand reaching into Class's pocket during the pat-

down search and grabbing a bag of marijuana; (4) the officers confining Class in the

back of their squad car for about 15 minutes while they investigated further; (5) Officer

Sand discovering a bag of methamphetamine in the engine compartment of the Lincoln;

(6) Class's subsequent statement to Officer Sand; and (7) the officers' discovery of a gun

during the search of the Lincoln's interior.

The Court agrees with Class that the initial stop, the pat-down search of Class

(including Officer Sand's reaching into Class's pocket), and the detention of Class in the

squad car were all unconstitutional.  But the Court also finds that, notwithstanding

these constitutional violations, the officers' discovery of the methamphetamine was

lawful because it was in plain view, and the officers' search of the interior of the Lincoln

was lawful because the discovery of the methamphetamine gave them probable cause.

Finally, the Court agrees that the statements made by Class need not be suppressed, largely for the reasons explained by Judge Leung.

To elaborate:  The Court agrees with Class that the officers did not have the right to conduct a *Terry* stop.[1]  "[O]fficers may 'conduct a brief investigative stop when they have reasonable, articulable suspicion that a person is committing or is about to commit a crime.'"  *United States v. Trogdon*, 789 F.3d 907, 910 (8th Cir. 2015) (quoting *United States v. Horton*, 611 F.3d 936, 940 (8th Cir. 2010)).  Officers Sand and Heroux saw nothing that would have led a reasonable officer to believe that "'criminal activity may be afoot.'"  *United States v. Lawhorn*, 735 F.3d 817, 821 (8th Cir. 2013) (quoting *Terry*, 392 U.S. at 30).  When the officers approached Class, he appeared to be working on a car that was legally parked on a public street in a residential neighborhood in broad daylight.  This was no more indicative of existing or imminent criminal behavior than spotting Class shopping for groceries or riding a bus.

The government points out that the officers knew that Class had a lengthy criminal record and that nine days earlier an unidentified informant had told a police officer that Class possessed a firearm.  (When police stopped Class based on this tip, they found no gun, but only ammunition.)  But this was not enough to justify a *Terry* stop.  If it were, then any St. Paul police officer who had been informed of these facts

---

[1]*See generally Terry v. Ohio*, 392 U.S. 1 (1968).

could have stopped Class at any time and in any location (such as when Class was

shopping for groceries or riding a bus).  Again, the only justification that the

government can identify for the *Terry* stop—other than the uncorroborated and stale tip

of an unidentified informant—was Class's lengthy criminal record.  But, as the Tenth

Circuit said in explaining the obvious, having a lengthy criminal record does not subject

a person to a lifetime of *Terry* stops:

> [K]nowledge of a person's prior criminal involvement . . .
> is alone insufficient to give rise to the requisite reasonable
> suspicion. . . .  If the law were otherwise, any person with
> any sort of criminal record—or even worse, a person with
> arrests but no convictions—could be subjected to a
> *Terry*-type investigative stop by a law enforcement officer at
> any time without the need for any other justification at all.
> Any such rule would clearly run counter to the requirement
> of a *reasonable* suspicion . . . .

*United States v. Sandoval*, 29 F.3d 537, 543 (10th Cir. 1994) (emphasis in original).

Because the officers did not have the right to stop Class, they necessarily did not

have the right to frisk him.  (Indeed, even if the officers would have had the right to

stop Class, they would not have had the right to frisk him, as they did not have

"reasonable, articulable suspicion that the suspect [was] armed and dangerous."

*Trogdon*, 789 F.3d at 910.)  And because the officers had no authority to stop or frisk

Class, they certainly did not have authority to confine him in the back of a squad car for

nearly 15 minutes.  In sum, the officers violated Class's rights under the Fourth

Amendment when they stopped him, patted him down, reached into his pocket, and detained him in the squad car.

Notwithstanding these constitutional violations, the Court agrees with Judge Leung that Officer Sand's later discovery of methamphetamine in plain view under the open hood of the Lincoln was lawful—and provided probable cause for the search of the car that uncovered the handgun and other objects that Class seeks to suppress. As Judge Leung noted, Officer Sand learned nothing during the stop, the frisk, or the detention of Class that led him to look under the Lincoln's hood. *See* R&R at 20. In other words, the unlawful stop, frisk, and detention were not meaningfully connected to the discovery of the methamphetamine. Items otherwise lawfully discovered in plain view are not tainted by earlier Fourth Amendment violations in such circumstances. *See United States v. Martin*, 982 F.2d 1236, 1240 (8th Cir. 1993) ("When Officers Persing and Blades decided to examine the interior of the Oldsmobile, they had no evidence that a drug transaction had occurred. . . . [But the defendant] ignores Officer Blades's testimony that the suspicious cellophane package of crack cocaine was in plain view when he looked through the car's open windows. . . . Thus, even if Officer Persing's inventory inspection was premature, the contraband was in plain view to Officer Blades from outside the car, so that seizure by him was inevitable and constitutionally permissible."); *United States v. Briddle*, 436 F.2d 4, 7 (8th Cir. 1970) ("For the purpose of

this opinion we accept Briddle's contention that the search warrant was invalid because it was not supported by a sufficient affidavit showing probable cause for its issuance. . . . [But] the shotgun was not discovered as the result of any search whatsoever.  Rather, it was discovered by being in plain view in the bedroom which Special Agent Hancock entered in the exercise of his conceded right to conduct a quick and cursory viewing of the apartment area for the presence of other persons who might present a security risk. . . . [The invalid search warrant and subsequent overbroad search did not] taint[] or bring[] under the exclusionary rule contraband type evidence discovered and seized under the circumstances of this case." (footnote omitted)).

Class argues that the methamphetamine was not "truly" in plain view because it was hard to see—"hidden" even—among the components of the car's engine.  ECF No. 52 [Obj.] at 26-29.  But the fact that an object is not easy to see—or even hidden—does not mean that it cannot be in plain view; what matters is that it was lawful for the police to be where they were when they saw it.  *United States v. Johnson*, 707 F.2d 317, 322 (8th Cir. 1983) ("Johnson seems to be arguing that the firearms were not in plain view because they were hidden in and under the bed, and were not openly visible when the officers entered the room.  However, the firearms can still fall within the plain view doctrine because they were discovered in a place where the officer had a right to be." (quotation omitted)).

Officer Sand was able to see the bag of methamphetamine with his naked eye

from the front of the car without moving or manipulating anything; he just had to bend

down to look under the hood.  Hr'g Tr. at 90:3-8.  Class cannot dispute that Officer Sand

had a right to be standing in front of a car parked on the side of a public street.  *United*

*States v. Schmidt*, 662 F.2d 498, 504 (8th Cir. 1981) ("The viewing officers were easily able

to discover what was inside the vehicle while standing in a place where they had a right

to be, i.e., a  public street."); *see also United States v. Vinson*, 805 F.3d 1150, 1152 (8th Cir.

2015) ("[Officer] Carlson did not violate the Fourth Amendment by bending down from

outside the SUV's rear door to look inside after all the occupants had exited.").

Class points out that Officer Sand did not notice the drugs when he walked past

the front of the car "several times" and found them only after he stood in front of the

car for "several minutes."  Obj. at 25-26.  But the plain-view doctrine does not require

that discovery of incriminating evidence be immediate or inadvertent; items that

officers find while actively looking for them are still in plain view.  *United Sates v. Gillon*,

348 F.3d 755, 760 (8th Cir. 2003) (citing *Horton v. California*, 496 U.S. 128, 138-40 (1990)).

Finally, Class suggests that, but for the unlawful detention, he would have closed

the hood of the Lincoln, and that would have prevented Officer Sand from spotting the

methamphetamine. Obj. at 27-28.  But the Court very much doubts that, after telling the

officers that he was trying to fix a disabled car, Class would have raised their suspicions

by shutting the hood while the officers were talking to him. (After all, Class did not

shut the hood when the officers drove up to the back of the Lincoln in their squad car,

exited the squad car, walked over to Class, and began talking with him and his

companion.) More importantly, Class had no reasonable expectation of privacy in an

area of the car that he had left exposed to anyone walking by on a public street; such an

area is simply unprotected by the Fourth Amendment. *See United States v. Sparks*, 291

F.3d 683, 691-92 (10th Cir. 2002) ("It was uncontroverted that Sparks got out of his truck

and left the driver's side door open. Thus, anyone walking by the truck, including

[Detective] Owens, could have looked into the truck and observed the 2x2-inch bags in

the middle of the front seat. Stated differently, because Sparks left the driver's side

door of his truck open, he had no legitimate expectation of privacy shielding that

portion of the interior of his truck which could have been viewed from outside the

vehicle by either inquisitive passersby or diligent police officers. The fact that Owens'

observation occurred after Sparks had been arrested does not affect the legality of the

observation. Indeed, the driver's side door of Sparks' truck presumably would have

remained open indefinitely if one of the arresting officers had not taken some action to

close it." (quotations, citations, and footnote omitted)).

As for Class's statement to Officer Sand in the back of the squad car: The Court

agrees with Judge Leung that Officer Sand adequately warned Class of his *Miranda*

rights[2] before questioning him.  *See* R&R at 22-23.  Class primarily complains that, in reading the *Miranda* warning, Officer Sand transposed two words:  Instead of saying "anything you say can and will be used against you in a court of law," Officer Sand said "anything you *can say* and will be used against you in a court of law."  Obj. at 30-32; Gov. Ex. 1 at 10:04:12-18.[3]  This minor miscue did not prevent the warning from conveying to Class that his statements could later be used against him, especially in light of the fact that Class had been arrested on nearly 40 prior occasions by St. Paul police, and therefore could probably have recited the *Miranda* warning from memory. *See* Gov. Ex. 10.  "A history of interaction with the criminal justice system supports an inference that an interviewee is familiar with his constitutional rights and that his statements to the police are voluntary."  *United States v. Vinton*, 631 F.3d 476, 482 (8th Cir. 2011) (citing *United States v. Griffith*, 533 F.3d 979, 984-85 (8th Cir. 2008)).

Class also says that his subsequent statement (which included an admission that the officers might find a pistol under a seat in the Lincoln) was involuntary because he was in pain from a leaking colostomy bag.  Obj. at 32-35.  It appears from the squad-car video that Class was indeed in pain, although it is difficult to know how much of Class's reaction was real and how much was intended to distract the officers milling

---

[2]*See generally Miranda v. Arizona*, 384 U.S. 436 (1966).

[3]Citations to exhibits refer to exhibits introduced at the evidentiary hearing before Judge Leung.

around the car in which Class had stashed methamphetamine and a gun.  But Class

does not contend—and no evidence suggests—that the pain prevented him from

understanding the *Miranda* warning or that the police actively coerced or deceived him.

Pain alone does not render a *Miranda* waiver invalid or a statement involuntary.  *United*

*States v. Cristobal*, 293 F.3d 134, 142 (4th Cir. 2002) ("Pain, on its own, will generally not

suffice to render a waiver invalid.  However, we recognize that there are situations

where, after receiving certain painkillers and other narcotics, a person might be

incapable of making a reasoned decision to abandon his or her rights.  Unfortunately for

Cristobal, nothing in the record indicates that he was incapable of giving a knowing and

intelligent waiver of his rights."); *see also United States v. Minard*, 208 F. App'x 657, 661

(10th Cir. 2006) (" . . . Minard had not received painkillers or other mind-altering drugs

in the eighteen hours prior to the interview; Minard did not indicate confusion about

any subject on which [Detective] Park questioned him.  There are no indicia of police

coercion in this encounter.  Therefore, Minard's waiver could not have been involuntary

even if his decision to talk were influenced by pain medication or pain level.").

For these reasons, the Court adopts Judge Leung's R&R to the extent that it is

consistent with this order and denies Class's motions to suppress the evidence and

statements obtained during the October 2, 2015 encounter.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

the Court OVERRULES Class's objection [ECF No. 52] and ADOPTS the May 5, 2015

R&R [ECF No. 48] to the extent that it is consistent with this order.  IT IS HEREBY

ORDERED THAT:

1.      Class's motion to suppress statements [ECF No. 27] is DENIED.

2.      Class's motion to suppress evidence [ECF No. 28] is DENIED.

Date:  June 22, 2016                          s/Patrick J. Schiltz
                                              Patrick J. Schiltz
                                              United States District Judge