UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 15-CR-0348(1) (PJS/TNL) |
| Plaintiff, | |
| v. | ORDER |
| RONALD ALLEN CLASS, | |
| Defendant. | |

David P. Steinkamp, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Susan E. Gaertner, LATHROP GPM LLP, for defendant.

Defendant Ronald Class is serving a 115-month sentence after pleading guilty to possession of a stolen firearm. This matter is before the Court on Class's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), under which the Court may reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction[.]" For the reasons that follow, Class's motion is denied.

I. BACKGROUND

*A. Class's Offense and Criminal History*

Class was arrested in October 2015 after he was found to be in possession of a stolen firearm that was located in a car on which he was working. Presentence Report ("PSR") ¶¶ 8, 82 [ECF No. 67]. He was also in possession of methamphetamine. PSR

¶ 8; Plea Agmt. § 2.  While detained on related state charges, Class was recorded trying to arrange for someone "who is not a felon" to falsely "claim the car was in storage and the firearm was left in the vehicle before the vehicle was purchased."  PSR ¶ 11.

Class pleaded guilty to possession of a stolen firearm and, in December 2016, the Court sentenced him to 115 months in prison, the top of the range recommended by the United States Sentencing Guidelines.  ECF Nos. 75, 76.  His expected release date is December 26, 2023.  Def. App. 0002 [ECF No. 104-2 at 2].

Class, who is nearly 57 years old, has an extensive and varied criminal history dating back nearly 40 years.  PSR at F.2, ¶¶ 33–72.  At sentencing, the Court found that he had 26 criminal-history points, which is double the number necessary to put him in the highest criminal-history category.  Sentencing Tr. 4 [ECF No. 84]; U.S.S.G. Ch. 5, pt. A (Sentencing Table).

Class's prior convictions include multiple convictions for each of the following: assault, PSR ¶¶ 40, 42–45, 48, 68, 71; burglary, theft, receiving stolen property, and other property crimes, PSR ¶¶ 35–39, 49, 62, 65, 67; fleeing a police officer in a motor vehicle (which, in one case, involved leading officers on a high-speed chase that ended in a horrific, injury-causing crash), PSR ¶¶ 60, 69; driving while intoxicated, PSR ¶¶ 41, 46–47; and drug possession, ¶¶ 33–34, 53, 55, 58, 61, 64, 66, 70.  Class committed his most recent violent offense in March 2015, when he fought with another inmate in a

county jail. PSR ¶ 71. All told, Class has been convicted of 21 felonies, 9 gross misdemeanors, and 12 misdemeanors. He also has an extremely poor record on supervision. PSR ¶¶ 34, 39–41, 45–46, 49, 53, 55, 60, 62, 64, 66, 70.

### B. Class's Medical Condition and the COVID-19 Pandemic

Class is currently incarcerated at MCFP Springfield, a federal medical center that houses approximately 850 inmates.[1] In the sentencing judgment, the Court recommended to the Bureau of Prisons ("BOP") that Class be confined in a federal medical center because of his "rather dire" medical condition, which the Court described as follows:

> Mr. Class has chronic medical needs due to a gunshot wound that destroyed much of his inner digestive system and caused significant damage to his interior organs, including his spleen, pancreas, stomach, and intestines. His spleen has been removed, which renders him vulnerable to infections. He . . . is now required to live with a colostomy bag, which requires constant drainage and care. Also of significance is that the doctors replaced and repaired his abdomen flesh with a thin mesh membrane, an area of maybe a foot by a foot (or more) which replaces the skin on his stomach, which renders him susceptible to serious injury. That particular area is the source of a chronic oozing and bleeding wound, which is a constant source of infection and needs ongoing chronic wound care. As a result of the removal of his spleen, his body's immune system has been significantly compromised, and he has a severe problem fighting off infections. A rather minor cut on his hand

---

[1] *See* Federal Bureau of Prisons, *MCFP Springfield*, https://www.bop.gov/locations/institutions/spg/ (last visited Sept. 8, 2020).

>resulted in an infection during the term of his recent confinement resulting in the amputation of the middle third finger on his left hand.  In addition, as a result of the damage to his pancreas, he also is now diabetic, and has significant dietary issues from his injuries and the limited functioning throughout his digestive tract.  He also has neuropathy in his feet from his diabetes, and continues to have problems with his digestive system, immune systems, infections, and corollary problems with the abdomen mesh/membrane and colostomy situation.

ECF No. 75 at 2.  In addition to these conditions, Class also suffers from hypertension and cirrhosis of the liver.  Def. App. 0041, 0157 [ECF No. 105 at 27, 143].

According to the BOP, there are currently four staff members and one inmate with COVID-19 at MCFP Springfield.[2]  In addition, four inmates and three staff members at that facility have recovered from the disease.[3]  Class argues that these numbers are probably understated, pointing out that the rate of infection in the federal prison system is far higher than the rate in the general population (which is true, *see* ECF No. 106 at 10–12), and that the BOP only tests symptomatic inmates (which may or may not be true[4]).  Finally, Class also claims that, contrary to the BOP's report of no

---

[2]Federal Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/index.jsp (last visited Sept. 8, 2020).

[3]*Id.*

[4]It appears that the BOP's policy may actually be to test all incoming inmates twice, but the written policy is somewhat ambiguous on this point.  *See* Federal Bureau of Prisons, *BOP Implementing Modified Operations*, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Sept. 8, 2020).  Under

inmate deaths at MCFP Springfield, he is aware of one inmate at the facility who recently died of COVID-19.  ECF No. 106 at 14.

### C.  Release Plan

Class has struggled to come up with an acceptable release plan.  Class's present plan is to live with a friend and the friend's wife.  ECF No. 103 at 4.  The couple owns a small two-bedroom home, and both are employed outside the home.  *Id.*  The couple is willing to provide temporary housing as well as assistance with Class's initial financial needs and transportation to his medical appointments.  *Id.*  Class states that he can pay for medical treatment through Medicaid or Supplemental Security Income disability benefits, although he does not currently have access to those benefits.  *Id.* at 5.

After reviewing Class's latest release plan, the government's attorney conducted a conference call with Class's friends and the probation officer to obtain additional information.  ECF No. 113 at 4.  Class's friends advised the government that they did

---

"Inmate Movement," the policy states that "[t]he BOP will test all inmates upon arrival at a BOP detention center/jail unit or at one of the three quarantine sites" and "[a]ll inmates will be tested again before movement to their designated BOP facility."  Under "Screening of Inmates," however, the policy states that "[a]ll newly-arriving BOP inmates are processed through quarantine or jail/detention sites and screened for COVID-19 exposure risk factors and symptoms," "[a]symptomatic inmates with exposure risk factors are quarantined," and "[s]ymptomatic inmates with exposure risk factors will be isolated and tested for COVID-19 per local health authority protocols."  The government does not seem to contest Class's claim that only symptomatic inmates are tested.  ECF No. 113 at 8.  For purposes of Class's motion, therefore, the Court assumes that the policy is to test only symptomatic inmates.

not intend for Class to stay with them until the expiration of his term of supervision, but were hopeful that they could provide a short-term temporary placement until Class found a place of his own. *Id.* at 5. The friends also assume that Class will be eligible for some form of public assistance. *Id.*

## II. ANALYSIS

### A. Standard of Review

Under 18 U.S.C. § 3582(c)(1)(A)(i), a court may reduce a defendant's term of imprisonment if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction[.]" According to a policy statement issued by the Sentencing Commission, the court must also find that "the defendant is not a danger to the safety of any other person or to the community," and that "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The application notes list several examples of extraordinary and compelling reasons that justify a sentence reduction, including "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A). The policy statement also includes a catch-all provision for cases in which "there exists . . . an extraordinary and

compelling reason other than, or in combination with," the reasons specifically described by the policy statement.  *Id.* § 1B1.13, cmt. n.1(D); *see United States v. Warren*, No. 10-CR-0276 (PJS/JJG), 2020 WL 3634513, at *2–3.  (D. Minn. Jan. 2, 2020) (applying § 1B1.13 to compassionate-release motions under the First Step Act, but declining to apply the outdated provision requiring that the Director of the Bureau of Prisons make the determination that the catch-all provision applies).

### B. Class's Motion

Class seeks a reduction in his sentence to time served on the ground that, because of his medical condition, the COVID-19 pandemic puts him at extreme risk as long as he is in prison.  The Court acknowledges that Class suffers from an array of severe medical conditions that put him at elevated risk from the pandemic.  Having carefully considered all of the relevant factors, however, the Court is persuaded that a reduction in Class's sentence is not warranted.  To address those factors:

First, Class is currently confined at MCFP Springfield, and he is likely to remain confined at that facility or another federal medical facility.  MCFP Springfield is providing the continuous care that Class needs for his many serious medical problems.  Moreover, MCFP Springfield appears to have COVID-19 well under control.  As noted, the BOP reports that there is currently only one active case among inmates and only four active cases among staff at that facility.  Class argues that these numbers are

unreliable, but the evidence supporting his argument is sparse.  In any event, even assuming that the BOP's numbers are somewhat understated, Class appears to be less likely to contract COVID-19 at MCFP Springfield than out in the community.

Second, Class's extensive criminal history indicates that he remains a danger to the public.  Most defendants commit fewer crimes as they age, but Class has continued to commit crimes (including violent crimes) into his 50s, even in his current medical condition.  Unsurprisingly, the BOP rates Class as being at high risk to recidivate.  ECF No. 104-2 at 5.  Class points out that he has had no disciplinary infractions during the nearly five years that he has spent in prison for his current offense.  But most federal prisoners commit few if any disciplinary infractions; the fact that Class has not committed any infractions provides little reason to believe that, after a lifetime of criminal activity, Class will obey the law if he is released.

Finally, Class does not have a realistic release plan.  His friends' willingness to provide him with temporary housing and initial financial assistance is admirable, but there is no plan for what will happen to Class after this transitional placement ends.  As demonstrated by the over 1500 pages of medical records that he submitted, Class needs constant care for his extensive and complex medical problems.  At present, Class essentially lives at a hospital, and his medical needs are met.  If he is released, Class will need to be seen often by doctors and other medical professionals.  Class does not have a

driver's license, and it is unclear if he will be able to obtain any public benefits or otherwise support himself.  While his friends are willing to help transport Class to medical appointments, they both have jobs, and it is unclear how Class would get to medical appointments while his friends are at work.  Moreover, it is unclear how Class will get medical care after he stops living with his friends.

In addition, Class has said that all of his criminal history is related in some way to his addiction to drugs.  PSR ¶ 106.  Yet Class has never shown much interest in treatment, *id.*, and that does not appear to have changed during his recent imprisonment, *see* Def. App. 005, 009 [ECF No. 104-2 at 5, 9].  The Court finds it difficult to believe that Class will simply sit in the living room of his friends' home—day after day, week after week—watching television or reading books.  Instead, Class is likely to do what he has always done:  Return to the streets, resume using drugs, and commit crimes to support his habit.

In sum, while there is no dispute that Class's medical condition puts him at elevated risk from COVID-19, he appears to be at less risk of contracting the disease at MCFP Springfield than he would be if he were released.  In addition, his extensive criminal history and lack of any realistic plan to support himself indicate that he is likely to recidivate and endanger the public.  For these reasons, the Court denies Class's motion for a reduction in his sentence.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT defendant's motion for release [ECF Nos. 94, 104] is DENIED.

Dated:  September 8, 2020     s/Patrick J. Schiltz
                              Patrick J. Schiltz
                              United States District Judge